UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DESHAWN MORGAN | 19 CR 641-2<br><br>Honorable Thomas M. Durkin |

**GOVERNMENT'S SENTENCING MEMORANDUM**

During his time as an associate of the violent Wicked Town faction of the Traveling Vice Lords street gang, defendant Deshawn Morgan personally murdered one person, directed the murder of two other individuals, and directed the attempted murder of two others. And after Morgan was arrested and charged with the murder-for-hire of Donald Holmes, Jr. and Diane Taylor, he assaulted a fellow inmate while in federal custody. For the reasons discussed below and in the Under Seal Exhibit to this memorandum, the government respectfully requests that the Court sentence defendant to 420 months' imprisonment, followed by five years of supervised release, which is sufficient but not greater than necessary to comply with the purposes set forth in 18 U.S.C. § 3553(a).

I.  BACKGROUND AND SUMMARY OF OFFENSE CONDUCT

Beginning in the 1990s, and continuing until the summer of 2020, the Wicked Town Faction of the Traveling Vice Lords street gang terrorized the west side of Chicago. The Wicked Town Travelers sold drugs in areas they controlled, including the area on and around the 500 block of North Leamington Avenue, and many Wicked Town Travelers also made money by committing armed robberies of victims across the west side of Chicago. But money was very much secondary to the gang's core

mission, which was gaining respect through murdering rival gang members or any other perceived threats. Indeed, the Wicked Town Travelers acquired a reputation on the west side of Chicago as a crew of killers, and within Wicked Town, the most violent members were the ones who were most respected by the gang's chief, co-defendant Donald Lee.

In the mid-1990s, Morgan joined the Mafia Insane Vice Lords street gang, but in approximately 1998, Morgan became a close associate of the Wicked Town Enterprise through his friendship and association with co-defendants Donald Lee and Marquel Russell. In approximately 1998, Morgan understood that Marquel Russell was a founder and a leader of the Wicked Town Enterprise. But by approximately 2003 and continuing until at least July 2020, Morgan understood that Donald Lee was the "Chief" and leader of the Wicked Town Enterprise.

Based on his association with Donald Lee and Marquel Russell, between approximately 1998 and June 2018, Morgan met and became associated with many other members of the Wicked Town Enterprise. At various times during his association with the Wicked Town Enterprise, Morgan provided guns, marijuana and money to several Wicked Town Enterprise members—including to co-defendants Torance Benson, Darius Murphy, and Demond Brown—who in exchange, acted as security for Morgan and were available to, and in fact carried out, shootings and murders at Morgan's direction and request.

For example, On January 18, 2018, Morgan directed co-defendant Darius Murphy, co-defendant Demond Brown, and Individual AB to attempt to murder

Victims 11 and 12 near 601 N. LeClaire Avenue on the west side of Chicago. PSR ¶ 12. Since at least November 2017, Morgan had on numerous occasions supplied guns, marijuana, and cash to Darius Murphy and Demond Brown. *Id*. ¶ 11. Based on that— and based on Morgan's close association with co-defendant Donald Lee—Murphy and Brown understood that if Morgan wanted anyone shot or killed, Murphy and Brown would carry out the shooting or killing for Morgan. *Id*.

On the afternoon of January 18, 2018, Morgan was driving around with Darius Murphy, Demond Brown, and Individual AB when Morgan saw a 2004 Pontiac Grand Prix that he recognized as a vehicle used by members of a rival gang. *Id*. ¶ 12. Morgan stopped his car near the 600 block of North LeClaire Avenue and directed Murphy, Brown, and Individual AB to exit the vehicle and attempt to murder the suspected rival gang members in the 2004 Pontiac Grand Prix. *Id*. Murphy, Brown and Individual AB got out of Morgan's car and, each armed with firearms, approached the Grand Prix. Moments later, MORGAN heard numerous gunshots. *Id*. Thankfully, neither Individual 11 nor Individual 12 died that day.

But Morgan used Murphy and Brown again about two weeks later, this time to much deadlier effect. Beginning in November 2017, Morgan became suspicious of his friend Donald Holmes, Jr., believing Holmes was cooperating with law enforcement and providing information regarding Morgan's drug sales. *Id*. ¶ 14. So, Morgan set a plan in motion to have Holmes murdered by Murphy and Brown. On January 31, 2018, Morgan spoke by phone with Murphy and Donald Holmes, Jr. *Id*. ¶ 15. During those calls, Morgan set up a meeting between Murphy and Holmes,

3

ostensibly for Murphy to provide a gun to Holmes. *Id.* But both Morgan and Murphy knew that they were setting a trap for Holmes to be murdered. Murphy and co-defendant Demond Brown were together at Murphy's residence on the evening of January 31, 2018, waiting for Holmes to arrive. When Holmes arrived outside of Murphy's residence on the 4700 block of West Arthington, Murphy jumped in the back seat, pulled out a gun, and shot Holmes in the back of the head, killing him. Unfortunately, Holmes was not alone that evening. Holmes's girlfriend, Diane Taylor, happened to be in the car with him, and she fell victim to Morgan, Murphy, and Brown's violent scheme. She, too, was shot in the head and killed that evening. After the murders, Morgan paid Murphy in firearms and cash.

Before ordering and paying others to commit violence for him, Morgan committed violent acts himself. In December 2007, members and associates of the Wicked Town Enterprise were involved in a conflict with members of the Four Corner Hustlers street gang, as well as one of the Four Corner Hustlers' associates, Reginald Rogers. *Id.* ¶ 10. On or about December 14, 2007, Reginald Rogers shot Morgan several times while Morgan was at a gas station in Chicago. *Id.* On January 27, 2008, Morgan drove to the 3400 block of West Walnut Street with the intention of shooting and killing Reginald Rogers in retaliation. *Id.* When Morgan arrived on the 3300 block of West Walnut Street, he saw Reginald Rogers in the driver's seat of a green Dodge Stratus. Morgan pulled his car next to Rogers's green Dodge Stratus and fired several shots into the vehicle using a .380 caliber pistol, killing Rogers. *Id.*

4

In addition to regularly engaging in violence, Morgan also sold drugs. Between 2011 and 2018, Morgan sold heroin to customers and drug-trafficking associates on the west side of Chicago. During that period, Morgan was responsible for the distribution of approximately 25 kilograms of heroin, and he regularly had a firearm readily available for protection.

Finally, on April 21, 2021, while in federal custody at Winnebago County Jail, Morgan assaulted a fellow inmate. *Id.* ¶ 17. Specifically, Morgan used his fist to punch Individual BB in the face, causing him to fall. *Id.* Morgan then used his foot to stomp on Individual BB's face, causing him serious bodily harm. *Id.*

On July 5, 2022, Morgan pled guilty to Count One of the superseding indictment and admitted his participation in the three murders and two attempted murders outlined above, which were committed in furtherance of the racketeering conspiracy. Morgan also pled guilty to the drug trafficking and assault as stipulated offenses. Dkt. 535.

## II.   PRESENTENCE INVESTIGATION REPORT

The government agrees with probation's advisory sentencing guidelines calculation and has no objections to the PSR. It should be noted that, due to Amendment 821, Morgan should be assessed only 1 additional point—rather than 2—for being under a criminal justice sentence at the time that the instant offense was committed. *See* U.S.S.G. § 4A1.1(e). However, even with this modification, Morgan would have 15 criminal history points, which still results in a criminal history category VI.

5

### III. ARGUMENT

Sentencing has four purposes: retribution; deterrence; incapacitation; and rehabilitation. See *United States v. Milbourn*, 600 F.3d 808, 812 (7th Cir. 2010). Title 18, United States Code, Section 3553(a), sets forth the factors courts are to consider in fashioning a sentence that is sufficient but not greater than necessary to comply with these purposes. First, however, the Court must calculate the applicable Guidelines range, which provides a starting point and initial benchmark for sentencing. *Gall v. United States*, 552 U.S. 38, 49-50 (2007); see also 18 U.S.C. § 3553(a)(4). Next, the Court must consider the other § 3553(a) factors. *United States v. Omole*, 523 F.3d 691, 697 (7th Cir. 2008). These factors include the need "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(A)-(D).

#### A.  Seriousness of the Offense and Need for Just Punishment

The seriousness of Morgan's crimes cannot be overstated. Morgan was responsible for the murder of three human beings and the attempted murder of two others. As this Court well knows, the body count would have been higher if Murphy and Brown had been successful in their efforts to murder Individuals 11 and 12 on behalf of Morgan. In sending out other young members of Wicked Town to engage in shootings and killings on his behalf, Morgan kept his own hands clean while promoting a culture of violence and lawlessness on the West side of Chicago.

6

The murders of Holmes and Taylor were especially egregious. Both individuals were executed at point-blank range without hesitation, without remorse. That Morgan ordered the murder of Holmes is, by itself, unconscionable. Morgan's *reason* for ordering the murder is an attack on the justice system, itself. The entire justice system would collapse if witnesses and cooperators are murdered just for having the temerity to work with law enforcement. Chaos would ensue. That's exactly what Morgan had in mind when he ordered Murphy and Brown to murder Holmes. That Morgan was mistaken about Holmes's cooperation makes it no less serious an affront to society and the safety of its citizens.

None of the 20-something victims of Wicked Town's reign of terror deserved to die. But Diane Taylor's murder was especially tragic. She truly was in the wrong place at the wrong time. And the Court heard Murphy's retelling of the murder via jail recording—Murphy shot and killed Holmes first, and Taylor attempted to flee from the car, only to have Murphy pull her by the hair and shoot her in the head. Murphy's description of the scene the murder is too grotesque to recount here. Suffice to say, there was no care or empathy shared with the victims. And what did Morgan do in response to this heinous act? He paid Murphy in guns and in cash.

Absent mitigation, Morgan's crimes would warrant a life sentence or the death penalty. But there is significant mitigation that the Court can and should consider. Morgan has fully accepted responsibility for his role in the violent criminal enterprise. Morgan pleaded guilty prior to trial, and at that time provided a comprehensive factual basis for his criminal conduct, including detailed admissions

of his role in three murders and two attempted murders, as well as drug trafficking. Morgan's decision to plead guilty brought a measure of closure to his victims, who did not have to depend on the outcome of a trial to see justice delivered. This, along with the additional information included in the Government's Under Seal Exhibit to this sentencing memorandum, were important factors in the government's decision to recommend a sentence of 420 months' imprisonment, followed by 5 years of supervised release.

### B. History and Characteristics of Defendant

Morgan's history and characteristics also support a sentence of 420 months' imprisonment. Morgan is a long-time gangster, drug dealer, and murderer with a significant criminal history. PSR ¶¶ 88-98. While it is true that the most significant penalty imposed upon Morgan was a three-year sentence in 2002 for possession with intent to distribute a controlled substance, Morgan's admitted conduct demonstrates a life lived as a gangster—selling drugs and committing (or directing) acts of violence.

In mitigation, there is no doubt that Morgan faced challenges during childhood that are worthy of the Court's consideration. For example, both of Morgan's parents used drugs—a theme all too familiar with the Wicked Town defendants. PSR ¶ 142. Both parents were also legally blind, and Morgan's mother had learning disabilities. *Id.* ¶ 141. Put another way, neither parent was capable of raising Morgan. And like most of the other Wicked Town defendants, Morgan grew up in an area where violent deaths and drug overdoses were common, especially for men. *Id.* ¶ 142. This, of course, led to Morgan turning to the streets, which is how he arrived at his current station in life. There are additional significant mitigating factors discussed in the

8

Under Seal Exhibit to this memorandum, and the government submits that aggravating and mitigating factors weigh in favor of a sentence of 420 months' imprisonment, followed by 5 years of supervised release.

### C. The Need to Protect the Public

The appallingly violent nature of the Morgan's crimes requires a lengthy period incarceration to protect the public from the possibility of his recurrent crimes. Morgan's sentence commenced at the time of his arrest by ATF on August 13, 2019. Accordingly, a sentence of 420 months' imprisonment would mean that if Morgan receives credit for good behavior and serves 85% of his sentence, he will be released from the Bureau of Prisons in approximately 2049, when he is around 67 years old. This lengthy period of incarceration is necessary to help protect the west side of Chicago from further crimes by Morgan.

### D. The Need to Afford Adequate Deterrence to Criminal Conduct

A sentence of 420 months' imprisonment also sends a clear message that society will not tolerate criminal organizations terrorizing the residents of any neighborhoods in Chicago. No member or participant in a gang that operates in the Northern District of Illinois should be under the misimpression that they can participate in a violent criminal enterprise, committing murders, attempted murders, and drug dealing, and believe that they can act with impunity. Nor should they think that murdering a potential government cooperator is a means to avoid justice. A sentence of 420 months of imprisonment will put would-be gangsters on notice that if they choose the path that Deshawn Morgan chose, they risk spending decades in

federal prison and being released only when they are too old to commit additional violent crimes.

## IV. SUPERVISED RELEASE

The government agrees with Probation's recommendation of a term of supervised release of 5 years, and further agrees with Probation's proposed supervised release conditions.

## V. CONCLUSION

For the foregoing reasons and the reasons detailed in the Under Seal Exhibit to this memorandum, the government respectfully requests that the Court impose a sentence of 420 months' imprisonment, followed by five years of supervised release.

    Respectfully submitted,

    MORRIS PASQUAL
    Acting United States Attorney

By: */s/ Jimmy L. Arce*
    JIMMY L. ARCE
    MEGHAN C. MORRISSEY
    BETH E. PALMER
    Assistant U.S. Attorneys
    219 South Dearborn St., Rm. 500
    Chicago, Illinois 60604
    (312) 353-5300